U.S. Secretary of Agriculture. Ms. Renard for the appellant, Ms. Lyons for the appellee. Ms. Renard, good morning. Good morning, Your Honors. Ellen Reno for the appellant, Marcus McDaniel. Your Honors, in this case we have... Can you put that microphone a little closer? Oh, sorry. There. I'm not used to this. I'm not used to this. I'm not used to this. I'm not usually quiet. I'll try to speak up. Mr. McDaniel, in this case, has brought forth evidence not only of discriminatory statements by the decision maker, but also ample evidence of pretext. The discriminatory statement, you're not white, stop acting white. A jury couldn't find that the reason that the supervisor made that statement was because she didn't think that he, as a black man, should be behaving the way he was behaving. That is race discrimination. A jury could also dismiss it as a stray remark. But, Your Honors, that is for the jury to decide. When was the remark made? The remark was made in the context of a performance discussion. She did not like that he hand-delivered a document to her instead of emailing it. When was that in relation to the job action that gives rise to this? Well, it's all within the same period. He did not even finish his... How long of a period? I do not know. Well, he was only employed for 11 months. Yes. And I thought in his deposition he made it clear that it wasn't anywhere near the summertime. In other words, he was let go in July, and he was pretty vague about when the remark was made, but it was not made in June or May, or at least the record doesn't show it. No, it wasn't made right before, but, Your Honors, that's part of the weight of the evidence. How does it connect to the informant action at all? Why is this evidence that he was terminated or his job was not made permanent for racially related reasons? He was terminated, Your Honor. The reason, it doesn't need to be connected directly to the employment decision because we're not asking for the court to view it as direct evidence. Well, for you to win this litigation, there has to be a finding that the termination was based on an impermissible reason to this race. Yes, there has to be a finding. How is that remark connected to the termination? We are going under the McDonnell-Douglas framework. Our strongest evidence is evidence of pretext. We don't need any racial remarks even to get to a jury on this type of case. You need to prove that there is a causal connection between his race and the termination. And we can do that through circumstantial evidence. I understand that. The only evidence that I've heard reference to is that one remark, some undefined period before the termination. And, Your Honor, that is just part of the circumstantial evidence. We don't need any racial statements. I understand the McDonnell framework. And we've gotten past the fact that he's a member of a group that's discriminated against. We're not dealing with the circumstance in which we have to find somebody else who's hired that isn't in the race. If you have the tender of an unprejudiced reason, a business reason, then the burden shifts back to you, does it not, to establish that there is a firing for an unlawful reason, right? Yes, and we've got pretext evidence. Now, you have to offer evidence. You have to offer evidence from which the trier of fact could reasonably find that. And the only evidence that you seem to be tendering is that one remark some months before. What is the other evidence? No, there's actually four types of evidence that we're offering. One is the statement and the fact that she falsely denied making the statement, which shows a guilty mind. The second is, in the beginning, she said she had problems with his performance. She told the HR person that it was his work that she was concerned about. And when it became apparent that she wasn't going to be able to back up that statement because he had gotten a good performance evaluation, that's when she switched to conduct. There's also the fact that the evidence of his misconduct is not specific at all. She can't say what he did specifically that led her to fear him. A loud voice and rolling eyes. Wait a minute, because Judge Sullivan went into great detail about he raised his voice, he used threatening body language, and he had a lot of details. I'm sorry. Body language, this court has found to be a very vague accusation. The witnesses, the supervisor who terminated him could not say specifically what he had done, what was his misconduct. The court has held that you can find such vague accusations unworthy of credence because there's no specifics. The only specifics that were given were that he rolled his eyes, he sighed, and he had a loud voice. You don't get fired. How much more specific can body language be than that? Well, I think people in meetings can roll their eyes and sigh. There you go. I'm not afraid you're going to come get me. If I was doing that right now, you would think I was being disrespectful to your argument. Disrespectful, yes, but not afraid for violence. And also, what I think is important is what the jury thinks of that. And finally, a very important fact is that the supervisor lied in her affidavit and said she did not make the decision. There's no nuance to this. She specifically wrote, I did not make the decision to terminate Marcus McDaniel. Letitia Toomer made the decision. She said that in her affidavit. That's not true. And this court has held in Evans v. Sebelius that even just controversy over who made the decision is enough to get your claim to a jury. Well, that was one factor that court used. Right. And here we have it as one factor as well. Let me take you back to what I was talking about. Judge Sullivan says one incident was so disturbing that agency employees discussed whether they should call security. Several female staff members testified that they felt afraid of Mr. McDaniel, particularly because they believed he was allowed to carry a gun for his duties. I mean, Judge Sullivan. That wasn't true, though. He wasn't carrying a gun. They don't have to be right. You understand this is not a board of review for personnel actions. Yes. As long as they're acting for reasons that are not prejudicial. But when you have somebody making a comment about someone's race, like stop acting white, you're not white. And you have her lying about making the decision. Why would she say she didn't make the decision? She was the supervisor. She has no reason to say she didn't make the decision other than the fact she didn't want to be tagged with it because she had an unlawful reason for making that decision. I see my time is up because I need to reserve for rebuttal. I'm happy to answer anything further. We'll give you the remainder of your time in reply. Okay. Thank you. Ms. Lyons. Good morning. May it please the Court. Jane Lyons from the U.S. Attorney's Office on behalf of the Secretary of Agriculture. USDA ended Appellant's probationary employment because some of his coworkers and supervisors, at times, perceived his conduct as disrespectful or less than professional. The district court properly entered summary judgment after discovery because the undisputed evidence in the record supports the nondiscriminatory reasons for the agency's action and does not permit a reasonable fact finder to infer an unlawful one. I'd like to start with a simple proposition, perhaps. But Ms. Reneau argued that the denial of the responsibility for the termination by Ms. Spate somehow prevented summary judgment here, and that is not the case. That she denied the statement in an affidavit she explained in her deposition at fairly considerable length. What she meant there was I didn't have the authority in my position at the time to sign the termination letter. And so Tish Toomer signed it because she had the authority. But she accepts responsibility for being the person who chaired the meeting, gave input at the meeting, and then made the decision. She agrees with being the principal person. She says she's the final decider. She says it's a collaborative decision insofar as she had feedback from other people. But she accepts full responsibility for the decision to terminate Mr. McDaniel. And providing more detailed information once the litigation begins does not create a genuine issue of material fact in the record. And that's the Hairston case. In terms of the issue of the conduct, there's quite a bit of unrebutted information in the record about his conduct at this meeting. It was a performance standards meeting as sort of the highlight. And Mr. McDaniel's account of that meeting is on page 60 of the joint appendix. And he doesn't refute any of the language that his co-workers reported, that he sat with his arms crossed, he made inappropriate comments, which Ms. Spate described as smart-alecky during her deposition. Another employee described him, again, as sitting with his arms crossed and having a sharp stare. And Ms. Detter, who sat directly across from him, said he threw himself back in his chair, he rolled his eyes, he sighed. And she described that conduct as disrespectful and negative and argumentative. So taken together, all of that unrebutted evidence, when you're a probationary employee, is enough to cause you some problems. And I think it's interesting that Mr. McDaniel's own comments about his supervisor and his relationship with Ms. Spate reinforce these notions. Could I just be clear, you said, to cause him some problems, including termination? Yes, particularly when you're a probationary employee, Your Honor. As McKenna v. Weinberger made clear back in 1984, the same standards don't apply when you're a probationary. That's why I wondered why you qualified your statement. I highlighted it a bit, because there is a difference. If this were a case where he was a permanently tenured employee, it might be a slightly different picture. I don't think it would come out differently, but it is true that it is a different standard. I thought your phrase was, enough to cause him some problems. I thought that was qualified, enough to get him fired. It's perhaps not the best choice of words. It is enough to have him not be converted to permanent employment. It's more precise. How do you distinguish what was said in Agnese Eto'o v. Fannie Mae? Oh, well, that is quite the case. First of all,  for a young black man smart like you, we are happy to have your expertise. I think I'm already paying you a lot of money. And our court concluded that that was sufficient direct evidence to go to the jury. Yes, Your Honor, and that's because it's directly tied to the decision that is under review. It's a person who is seeking a promotion, and that is what he is told, basically, is the reason he's not getting it. So it's directly tied. It's direct evidence of animus, for one thing. For a young black man, under the Supreme Court's decision, Ash v. Tyson Foods, the young black man is particularly problematic, and there's also evidence in that Agnese Eto'o case that the pejorative word had been used by another employee. So with those two facts, that's a very, very different case than what we have here, which is at most an ambiguous comment made by a decision-maker but unrelated to the decisional process. If it's ambiguous, does that mean it's for the jury to decide? No, Your Honor, because in light of all of the evidence on this record, it wouldn't be a reasonable inference that there was an animus that infected the decisional process. And some of the other evidence that makes that unreasonable is that Ms. Speight recommended the termination of a white employee for very similar conduct. That is, how he conducted himself at meetings with management. And she is also an African-American. That doesn't prevent, of course, an inference, but it makes it a much, much less reasonable inference on this record. Who was it who said, I can get rid of you any time I want? Was that Speight? That is also alleged to have been Ms. Speight, yes, Your Honor. But that is, again, not in the course of – it's in the course of dealing with him as a supervisor on some things. Perhaps the sort of remark that is designed to try to help him let him know that she's having difficulty with him. And he describes having difficulties with communication with her in interesting ways. And he said – so it's Ms. Speight he has that with? And then there's another time he describes a meeting with Ms. Toomer where he said he openly told her, those are his words, that he wasn't trying to be coy or smart with her. So there are a couple of other occasions where he's having difficulty communicating and he knows he's being perceived. But doesn't that last statement, he gets the benefit of the reasonable inference that he – at this point? I'm sorry, Your Honor, which is the last statement? What he said, he wasn't trying to be cute or – Cute or coy with her? He gets the benefit of reasonable inferences based on the record, but it's hard to draw any reasonable inference from that remark out of his mouth other than – Well, you put it in the context that he was having difficulty communicating with people. But he, at least in that case, tried to indicate he wasn't trying to be coy or smart, Alec. Right. He – yes. On that occasion, he's saying he's not trying to be, but it does portray an awareness that he might be. Might be perceived that way. Correct. He might be perceived that way, but the perception that he is being smart Alec-y or coy or – So I thought if you were a probationary employee, you could be fired for any reason. You could be fired for any reason or no reason at all. Could I finish? I'm sorry, Your Honor. You could be fired for any reason so long as it's not unconstitutional or a violation of Title VII. And maybe there's some other statutory provisions. Of course, like the Age Discrimination Act, for example. Yes, as long as there isn't an unlawful reason, you can be terminated as a probationary employee for any reason or really no reason at all. So in the case that Judge Henderson asked you about, you distinguished that on the ground – well, tell me how you distinguished it. I tried to distinguish it because the statement on its face, for a young black man smart like you, we are happy to have your expertise. I think I'm already paying you a lot of money, is directly connected to the decision not to pay him more money, not to promote him. And it is direct evidence of animus, particularly because of the use of the term young black man. Whereas in this case, we just have an ambiguous remark about race. And Title VII doesn't prohibit mention of race in the workplace. So do we know in that other case what the timing was? It's connected with the explanation he's given for why he's not getting a promotion or it's in the meeting. I can't quite remember, but it's very close in time. No, that's not. It's connected to the decisional process. No, you misunderstand my question. Oh, I'm sorry. Judge Santel was asking appellant's counsel about timing. Correct. And as Judge Henderson pointed out, he'd only been working there 11 months. Yes. So I was wondering in the other case, what was the timing? Not as you responded in terms of was it connected, but when did it occur? I don't know how far into his employment. That's my point. Yeah, I don't know how far into his employment he sought the promotion. I can't recall that. Much less. It's not even mentioned in the record. That's right. I'm sorry. I can't answer that with certainty, much like I can't answer with certainty on this record when the remark was made. So I thought the point of the Supreme Court case in that case was it's almost like an environmental issue. This is how the supervisor is viewing the employee. And then when the employee comes up for promotion, he doesn't get it. And that was enough to say summary judgment is inappropriate. I'm asking you whether you view the cases that way or not. I just want to be clear about that. I view the cases as requiring a direct – when there's direct evidence of animus, like I think you're talking about there, it's direct evidence of an unlawful bias. Then I think you're in the category of cases where summary judgment is not allowed. And it almost doesn't matter in terms of the timing of it. Yes. If there's direct evidence by a decision maker, I think that's an important clarification. A stray remark by a coworker who has nothing to do with the decision does not take you out of summary judgment. But that is very, very different from what we have in this case, which is at most an ambiguous comment by a decision maker but unrelated to the decisional process that led to the firing. And that statement is what? The statement in this case? The ambiguous statement that's unrelated? Yes. Which you're identifying as what? The statement in this case is you aren't quite – Stop acting like it. Stop acting like it. Right. Okay. Yes. I see my time has expired. If there are no further questions, respectfully ask that this decision be affirmed. All right. Thank you. Yes. Okay. Your Honor, I think it's very important that you have to look at the totality of the evidence. The statement that we're offering, we acknowledge it is not direct evidence because it is not, I fired him because he was trying to act white. But this court has held, at least in two recent cases, that a racially biased statement does not need to be directly connected. The first case was Talavera v. Four in 2011. A nonpromotion was at issue, and the biased statement was about men bombing in the office over serving in the military. It had nothing to do with the nonpromotion. The second case, Morris v. McCarthy, just last year in 2016, it was decided that the statement about another employee, that a white woman won't give him a promotion, therefore I'm going to give him a promotion, that that statement was part of the quantum of evidence that needed to be considered because it was the decision maker who said it, just as it is here. So you don't really get employers, decision makers saying, I'm going to suspend somebody because they're white, or I'm going to do this because he tries to act white.  That gives you a window into her mind. But what is the evidence that just had to do with his delivering something as opposed to emailing? Well, we don't know why she said it. I didn't ask why. He tried to get the context in which she said it. Yes, that is the context in which she said it.  That the way he behaved was too proper for a black person, and she didn't appreciate, I mean, that was the impression that he had, that she didn't appreciate that he... His acting properly? Yes, that he was behaving businesslike and handing her a formal document instead of sending an email. That's the inference that I draw. A jury can draw a different inference. The point is she's saying he doesn't... What I'm getting at is the argument that's made, not the argument, the position is he's fired or he's terminated as a probationary employee because of his conduct. And the statement on which you're relying is where she's saying he is acting too properly, too respectfully. So I'm trying to understand how you're connecting that to racial discrimination. You know, I would trust the jury to sort that out. I understand, but juries have to be reasonable, and we have to understand that a reasonable jury could, and that's why I was asking what your theory was. Well, you could go with another theory that she thinks, because he speaks loudly and rolls his eyes, that that's acting white. I don't... No, I'm just focusing on the evidence. And you've got a trial court decision here where we have to be able for you to prevail to find those findings were clearly erroneous. I'm sorry? It's a de novo review. So what I'm asking is that this evidence be considered in the context of the other evidence, the shifting from performance to conduct. That's my mistake. But I still don't understand the connection between the statement and the race, being terminated because of his race for that statement.  That's all I'm getting at. The reasonable inference to be drawn, and it's not the only one, would be stop acting white means whatever he's doing. I don't know which thing she thinks is the equivalent of acting white. She's saying, she's making a racial statement that you're not acting the way that black people should act. And you remember, she's African American also, so she is telling him... But this is summary judgment, right? So you had a burden here, didn't you? We have the burden to show an issue of fact. Right. And here we have, in addition to evidence of pretext, we have evidence of racially... I mean, it's obviously based on race because she says stop acting white. If he was white, she couldn't say that to him. He would be just fine to her. So the inference is she's saying what? That because he's black, he would be lazy and he'd just rely on e-mail as opposed to delivering the document personally? That could be an inference. I have to tell you, I wasn't sure what was intended here. Your Honor, I'm not sure either, but I do trust the jury to figure out why she would make such a statement. I mean, she denies making it, so that's another fact that goes in our favor, that denial... Your client hasn't offered any explanation of it either. Well, because he's not in her mind. All he knows is that... But how he perceived it. Okay. I think you have to... If you analogize it to the gender situation and you had a woman who was... You're acting too much like a female. You ought to act more like a man. Or you're acting too masculine. You're acting too manly. You should wear nicer dresses or something. You don't fit my image of how a black person should be at work. Okay. I don't know what her image is, but it wasn't Mr. McDaniel. Okay. And that is a racial... She was thinking about race when she was thinking about the way he acted in the workplace. And then she shifts reasons. She denies that she made the decision. And, yes, she may have an explanation. But the jury gets to decide whether they believe her explanation. All right. Your time's up. Thank you.
judges: Henderson, Rogers, Sentelle